UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TONI TERMINI, individually, and as Executor
of the Estate of Salvatore Termini, deceased,

        Plaintiff,

v.                                                      ACTION NO. 2:06cv591

LIFE INSURANCE COMPANY OF NORTH AMERICA,

        Defendant.

**OPINION & ORDER**

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

**I.  PROCEDURAL and FACTUAL BACKGROUND**

Plaintiff, as beneficiary of a decedent formerly employed by Electric Power Research Institute ("EPRI"), brought the present action seeking accidental death and dismemberment benefits under an employee benefits policy that the Life Insurance Company of North America ("LINA") issued to EPRI and administered.

For a number of years leading up to the date of his death on May 11, 2005, plaintiff's husband Salvatore Termini ("the decedent") was an employee of EPRI and participated in the company's group accidental death and dismemberment policy. Under the terms of the policy, LINA is obligated to pay benefits to eligible persons for the death or loss from bodily injuries "[c]aused

by an accident which happens while an insured is covered by this policy." On January 1, 2004, LINA issued a renewal accidental death and dismemberment policy to the decedent, which provided $500,000 in coverage. The decedent listed plaintiff as the beneficiary of this policy.

On April 30, 2005, while the policy was in full force and effect, the decedent sustained injuries as a result of a fall while jogging. Because of the fall, the decedent suffered a basilar skull fracture and subarachnoid hemorrhage. After this incident, the decedent became unconscious and had a hypoxic event, which led to cardiac arrhythmia and eventually his death on May 11, 2005.

On or about June 27, 2005, EPRI applied for the proceeds of the policy on the plaintiff's behalf. LINA denied the benefits on July 13, 2005, after determining that it was not proven that the decedent's death resulted solely from an accident, and not by sickness, disease, or bodily infirmity. On August 2, 2005, plaintiff furnished LINA with the identity and location of an eyewitness to the decedent's fall. On November 15, 2005, LINA again denied the benefits without interviewing the eyewitness or contacting the decedent's physicians. On December 3, 2005, plaintiff appealed the decision, but on April 7, 2006, LINA upheld its denial of the claim.

On August 28, 2006, following the repeated denial of accidental death and dismemberment policy benefits, plaintiff filed a five-count complaint against LINA in the Circuit Court for the City of Chesapeake.[1] On October 23, 2006, LINA removed the action to this Court, asserting that federal question jurisdiction existed under 28 U.S.C. § 1441(a) and arguing that plaintiff's claims were governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et.

---

[1] The complaint filed in the Circuit Court of Chesapeake also named CIGNA Group Insurance Companies ("CIGNA") as a defendant. The Court dismissed CIGNA from this action, however, as there was no such legal entity. See Termini v. Life Ins. Co. of North America, No. 2:06cv591, 2006 WL 3579072, at *7 (E.D. Va. Dec. 8, 2006).

seq. LINA then moved to dismiss the complaint for failure to state a claim upon which relief can be granted. In response, plaintiff moved to remand the action to state court or, alternatively, to amend her complaint to expressly state ERISA claims.

In its December 8, 2006, Memorandum Opinion, the court denied plaintiff's motion to remand and held that removal was proper, as ERISA preempted plaintiff's state law claims. See Termini, 2006 WL 3579072, at *6. Additionally, the court converted plaintiff's state law claims into an ERISA claim under § 502(a) and denied LINA's motion to dismiss. Id. at *7. Notwithstanding, the court granted plaintiff's motion to amend, which allowed plaintiff to explicitly set forth claims under ERISA. Id. at *7-8.

On December 20, 2006, plaintiff filed her amended complaint demanding, among other things, recovery of the benefits of the LINA policy under 19 U.S.C. § 1132(a)(1)(B). See Am. Compl. ¶¶ 35-51. LINA filed its answer[2] on January 5, 2007. In compliance with discovery deadlines contained within the Rule 16(b) Scheduling Order, plaintiff propounded Interrogatories and Requests for Production of Documents on Defendant on April 5, 2007. On April 20, 2007, LINA filed its Motion for Protective Order [Doc. No. 25] and Memorandum in Support of Motion. Plaintiff filed her Brief in Opposition to Defendant's Motion for Protective Order on April 30, 2007. On May 3, 2007, LINA filed its Reply Brief, rendering its motion for protective order ripe for review.

## II. ANALYSIS

LINA asserts that discovery is inappropriate in this case because ERISA's policies prohibit

---

[2] Along with its answer, LINA filed a motion to strike plaintiff's jury demand and a memorandum in support of the motion.

the Court's consideration of evidence outside of the administrative record. LINA argues that if nothing outside of the record is admissible, it follows that discovery is impermissible because it cannot be calculated to lead to admissible evidence.[3]

Plaintiff asserts, however, that the Supreme Court has interpreted ERISA to limit a court's inquiry to the administrative record only if the policy grants discretion to the policy administrator to deny benefits. To that end, plaintiff contends that the policy issued by LINA to EPRI that provided coverage to the decedent was not a discretionary policy. Therefore, she argues, the court may review LINA's denial of benefits *de novo* and, in its discretion, allow evidence that was not before the policy administrator.

The Court may grant a protective order

> [u]pon motion by a party . . . accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c). Under the Federal Rules, the court may order, as LINA requests, "that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1).

As LINA has certified that it conferred in good faith with plaintiff to resolve this discovery dispute, the Court will consider and decide LINA's motion for a protective order on its merits.

The United States Supreme Court interpreted the standard of review to be employed by courts reviewing decisions to deny benefits under an ERISA plan in Firestone Trade and Rubber

---

[3]LINA relies on Federal Rule of Civil Procedure 26(b)(1), which instructs that parties may obtain discovery regarding matters relevant to the claims or defenses of any party. Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Company v. Bruch, 489 U.S. 101 (1989). In its opinion, the Court announced that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. An administrator's denial of benefits pursuant to a plan granting her fiduciary discretionary authority is reviewed under the abuse of discretion standard. See Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 341 (4th Cir. 2000) ("[W]e affirm that the abuse of discretion standard, not the arbitrary and capricious standard, is the appropriate one for judicial review of a fiduciary's discretionary decision under ERISA.").

Applying Firestone to an ERISA case in which *de novo* review was appropriate, the Fourth Circuit Court of Appeals adopted "a scope of [*de novo*] review that permits the district court in its discretion to allow evidence that was not before the plan administrator." Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1025 (4th Cir. 1993). The Quesinberry Court provided an inexhaustive list of exceptional circumstances warranting a district court's exercise of discretion to allow additional evidence, including the following:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which could have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

Id. at 1027.

Under the framework of ERISA, therefore, plaintiff's discovery is appropriate only if the Court determines that the LINA policy does not grant discretionary authority - resulting in the

Court's undertaking a *de novo* review of the administrator's denial of benefits - and that an exceptional circumstance is present.

"[I]n deciding whether a plan provision for benefits is prescriptive or discretionary, [courts] review the Plan's language *de novo*." Booth, 201 F.3d at 341 (citation omitted). Although no specific terms are required in a plan to grant discretionary authority, "[t]he plan's intention to confer discretion on the plan administrator or fiduciary . . . must be clear." Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002). Accordingly, any ambiguity in an ERISA plan "'is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured.'" Id. at 269 (citing Bynum v. Cigna Healthcare Inc., 287 F.3d 305, 313-14 (4th Cir. 2002)).

The relevant language of LINA's policy includes the following passages: "We agree to pay benefits for loss from bodily injuries: (a) caused by an accident which happens while an insured is covered by this policy; and (b) which, directly and from no other causes, result in a covered loss." Am. Comp. Ex. 3. The policy requires that "[w]ritten notice must be given within 30 days (Kentucky: 60 days) after a covered loss begins or as soon as reasonably possible . . . Notice should include the Insured's name, address and policy number." Id. Under the next section, entitled "CLAIM FORMS," the policy states, "When we receive the notice of claim, we will send forms for filing proof of loss. If claim forms are not sent within 15 days the proof requirements will be met by submitting, within 90 days, written proof of the nature and extent of the loss." Id. Finally, the policy instructs that "[b]enefits for loss covered by this policy will be paid as soon as we receive proper written proof of such loss." Id.

LINA argues that the policy's provision binding LINA to pay benefits for loss from bodily

injuries *caused by an accident*, which *directly and from no other causes* resulted in a covered loss, coupled with the policy's requirement for the furnishing of written proof of the loss, vests in LINA deciding authority over whether a claim qualifies for payment. (Reply 3.) Exercise of its deciding authority, LINA contends, necessarily involves exercise of discretion. On that basis, LINA asserts that its policy grants LINA discretion in determining benefit claims and, therefore, the Court should review LINA's decision to deny benefits under an abuse of discretion standard.

The provisions of LINA's policy are similar to those in Gallagher. In Gallagher, the Court held that a provision establishing that the insurer will pay a monthly benefit if the insured "submits satisfactory proof of Total Disability" to the insurer did not confer on the insurer discretion in determining benefit eligibility. Gallagher, 305 F.3d 269. The provision in LINA's policy, which conditions the disbursement of benefits on LINA's receiving "proper written proof of such loss," is substantially similar to the Gallagher provision, which conditioned disbursement of benefits on the insurer's receiving "satisfactory proof of Total Disability." See id. Like the Gallagher Court, this Court finds that the policy does not give the administrator, LINA, fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the policy. See id; see also Neumann v. Prudential Ins. Co. of America, 367 F. Supp. 2d 969, 976 (E.D. Va. 2005) (holding that a plan conferring on the insurer the ability to decide whether a participant is eligible for benefits does not "imply discretion or warrant abuse of discretion review."). Because the LINA policy does not grant LINA discretionary authority, the Court will review LINA's denial of benefits *de novo*. See Firestone, 489 U.S. at 114.

Unless under exceptional circumstances, including those listed above, "courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was

presented to the plan administrator . . . ." Quesinberry, 987 F.2d at 1026-27. When faced with a motion to introduce evidence not presented to the plan administrator, "the district court should address why the evidence proffered was not submitted to the plan administrator." Id. at 1027. Admission of the evidence may be warranted when the administrative procedures did not allow for the introduction of the evidence. See id. Such additional evidence is also admissible when the claim involves a complex medical issue on which expert testimony is necessary and the administrative procedures do not have a mechanism for taking such testimony. Id. "[W]here necessary to the protection of the interests of employees and beneficiaries," courts may also consider evidence not proffered to the administrator in situations in which the payor on the policy is also the administrator in charge of reviewing whether the claim should be allowed. Id.

In Quesinberry, the court held that the district court did not abuse its discretion when it allowed the admission of expert medical testimony "regarding the complex issue of Mrs. Quesinberry's cause of death," particularly since the payor on the policy was also the administrator in charge of reviewing the claim. Id. The court recognized the necessity of such testimony, as it could "facilitate the understanding of complex medical terminology and causation," which would help the court determine whether the plan administrator was correct in deciding that the death was not solely attributable to an accident. Id.

As in Quesinberry, the plaintiff in the instant case claims that LINA, the policy administrator, erred in denying benefits after determining that the proof provided to it did not establish that the decedent's death was caused directly by an accident, and not caused by sickness, disease, or bodily infirmity. The plaintiff in this case alleges that the ultimate cause of the decedent's death stemmed from a traumatic fall while decedent was jogging. Am. Compl. ¶ 11. Specifically, plaintiff claims

that decedent's "injuries included, but were not limited to, a basilar skull fracture and subarachnoid hemorrhage.  As a further direct and proximate result of his fall as aforesaid, [decedent] struck his head, became unconscious, had a hypoxic event leading to cardiac arrhythmia and death."  Am. Compl. ¶¶ 12-13.  Plaintiff's first application for the proceeds from decedent's accidental death and dismemberment policy was rejected by LINA.  Am. Compl. ¶ 17.  After the first rejection, plaintiff resubmitted her claim and supplemented it with contact information for an eyewitness to the decedent's accident.  Without interviewing the witness, or contacting the decedent's healthcare providers pursuant to a medical investigation, LINA again denied plaintiff's claim on the basis that decedent's death was not caused solely by his jogging accident.  LINA subsequently refused plaintiff's appeal of its decision.

Here, as in Quesinberry, LINA is both the payor on the policy and the administrator in charge of reviewing claims.  Also as in Quesinberry, resolution of whether the decedent's death is attributable solely to his accident requires an understanding of complex medical terminology and causation.  Under these exceptional circumstances, along with plaintiff's allegation that LINA did not evaluate all of the evidence available to it in administrating plaintiff's claim, the Court finds that the admission of additional evidence is warranted.  See Quesinberry, 987 F.2d 1027.  As evidence outside of the administrative record may, in this case, be considered by the court in its *de novo* review of LINA's denial of plaintiff's claim, plaintiff's discovery requests are permissible to the extent that they are "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and do not subject LINA to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).  Because LINA has not contested specific interrogatories or requests for production on grounds that complying with the discovery requests would result in

annoyance, embarrassment, oppression, or undue burden or expense, LINA's motion for a protective order is DENIED. LINA is, therefore, ORDERED to respond to plaintiff's interrogatories and requests for production within eleven days of the entry of this Order.

## V. <u>ORDER</u>

For the foregoing reasons, the Court ORDERS that LINA respond to plaintiff's interrogatories and requests for production within eleven days of the entry of this Order.

The Clerk shall mail a copy of this Order to all counsel of record.

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia

May 21, 2007